United States District Court
District of Massachusetts

```
 _____
                                  )
Mariyah Montae,                   )
          Plaintiff,              )
                                  )
     v.                           )    Civil Action No.
                                  )    08-12064-NMG
American Airlines, Inc. and       )
Massachusetts State Police,       )
          Defendants.             )
 _____ )
```

MEMORANDUM & ORDER

GORTON, J.

Pro se plaintiff Mariyah Montae ("Ms. Montae"), a California resident, has brought suit against American Airlines, Inc. ("AA") and the Massachusetts State Police ("MSP") alleging various federal and state claims related to plaintiff's arrest at Logan Airport in August 2007.  Both AA and the MSP have moved to dismiss and those motions are before the Court.

I.  **Background**

  A.  **Factual Background**

  Ms. Montae alleges that on August 21, 2007, she was scheduled to take an AA flight from Boston, Massachusetts, to Tucson, Arizona to visit her mother.  Ms. Montae waited to board her flight in the AA Admirals Lounge at Logan Airport, an amenity for which she paid an additional $50.  As she drank a glass of wine at the bar, she chatted with the bartender, mentioning that she suffered from Post-Traumatic Stress Disorder ("PTSD") due to

-1-

"horrific" events she had experienced.[1]  The plaintiff also told
the bartender she was extremely tired and apologized for her
"sloppy appearance."

Some time thereafter, two men sat down next to Ms. Montae at
the bar and began conversing with her.  One of the men chatted
with her for approximately 30 minutes and bought her a sandwich
and a drink before departing.  Ms. Montae alleges that while she
was eating her sandwich, an AA employee named Michelle Matheson
("Ms. Matheson") began to "harass and discriminate against [her]
telling her bizarre things in a loud tone so the whole room could
hear."  Ms. Matheson also instructed other customers at the bar
not to buy Ms. Montae any food or drinks, which made her feel
uncomfortable and embarrassed.  Ms. Montae tried to apologize to
Ms. Matheson and explain that there had been a misunderstanding
but Ms. Matheson was "hostile and belligerent".

In response to Ms. Matheson's alleged insults, Ms. Montae
left the Admirals Lounge, stopping first at the desk to confirm
that she would be refunded her $50.  As she turned around to
leave the desk, two state police officers handcuffed and arrested
her without explaining why.  Ms. Montae asked them what she had
done but the officers purportedly told her to "shut up."  Ms.
Montae also alleges that the officers used excessive force

---

[1]   The nature of the alleged events is not clear but the plaintiff
implies that she was kidnapped by the United States military in 2003 and
falsely arrested and beaten by the police in Arizona.

against her, grabbing her arms violently and attaching the
handcuffs too tightly.  The plaintiff insists that, at the time
of her arrest, she was neither drunk nor antagonistic.

The officers, John Ross and "John Doe", forcibly escorted
Ms. Montae through the airport and took her to a holding cell.
Ms. Montae alleges that she was pushed against the wall of the
cell, causing contusions on her back and head.  She believes she
may have briefly lost consciousness when her head was slammed
into the wall.  One of the officers kicked the gate of her cell
and told her "they would turn her into a lady".  She also
suggests that several unnamed officers sexually harassed her by
saying they would "hump whores."  Ms. Montae was frightened and
began to have a panic attack but calmed down when the officers
left.  She recalls that medics arrived at the cell but she was
afraid to tell them what had happened.

The plaintiff was released from the holding cell after
several hours and ordered to appear in court the following
morning.  Feeling ill and traumatized, she spent the night at a
hospital.  At the arraignment, she was charged with disorderly
conduct and assault and battery and was appointed a public
defender.  The police officer accused her of breaking his thumb
which the plaintiff claims is impossible given that she was
handcuffed.  The charges were later dropped but Ms. Montae was
not satisfied with the public defender's legal representation

-3-

because she had encouraged the plaintiff to enter a guilty plea.

The plaintiff was re-booked on a flight to Tucson the day after her arraignment.  The agent who re-booked the flight reportedly told the plaintiff's mother that the plaintiff "did nothing wrong" and that Ms. Matheson "was completely at fault for her irrational and unreasonable behavior."  AA, however, refused to let her board the flight the second day.  When the plaintiff asked an AA representative why she was not allowed to board, he rudely replied, "You know why."  The plaintiff contends that AA's actions violate the Air Carrier Access Act of 1986 ("ACAA"), which prohibits air carriers from discriminating against individuals with physical or mental impairments.

Ms. Montae was re-booked (once again) on a flight the following morning at 6:00 a.m. and forced to spend the night at a hotel.  Upon her arrival at the airport, however, she was again prohibited from boarding the flight and was ultimately forced to take a bus to Arizona to visit her mother.  The plaintiff claims that the defendants' actions caused her serious emotional, physical and psychological harm and that she is currently in trauma counseling to address, inter alia, the events that occurred at Logan Airport in 2007.

The plaintiff asserts that both AA and the MSP discriminated against her on the basis of gender, disability (she suffers from PTSD), race (she is of partial Mexican descent), religion (she is

a "student of many religions, including Islam") and political
beliefs (she is a "well-known peace activist").  She brings
claims against the defendants pursuant to several federal
statutes, including the Americans with Disabilities Act ("ADA"),
the Civil Rights Act of 1964 and the ACAA, as well as for
intentional infliction of emotional distress, negligence,
harassment and violations of the First, Eighth and Fourteenth
Amendments to the United States Constitution.

**B.   Procedural History**

On January 23, 2008, Ms. Montae filed a complaint against AA
and "the Boston State Police Department" alleging unlawful
arrest, sexual harassment, intimidation, lying in an official
duty, racial profiling and violations of the ADA and various
civil rights.  That case was assigned Civil Action No. 08-10099
("the January, 2008 case").  Because the complaint did not allege
any facts underlying the allegations, the Court ordered the
plaintiff to show cause why the action should not be dismissed or
to file an amended complaint curing various pleading
deficiencies.  The plaintiff failed to do so in a timely manner
and, accordingly, in July 2008, that case was dismissed <u>with
prejudice</u>.

On December 1, 2008, Ms. Montae filed a new complaint
against AA and the MSP, correcting the misnomer in the previous
complaint and seeking application of Fed. R. Civ. P. 60 for her

-5-

prior "excusable neglect."  Given that the January, 2008 case had already been closed, the Clerk assigned a different case number to the plaintiff's new complaint, Civil Action No. 08-12064 ("the December, 2008 case").  The allegations and the named defendants in the new complaint were very similar but not identical to the original complaint.  Notably, the new complaint identified Officer John Ross and several unnamed "John Doe" officers.

Despite some improvements, the new complaint failed to satisfy the pleading requirements of Fed. R. Civ. P. 8 because it did not link specific factual allegations of wrongdoing with particular defendants.  Thus, on April 10, 2009, the Court ordered the plaintiff (once again) either to show cause within 35 days why the new action should not be dismissed or file an amended complaint curing the deficiencies.  This time, the plaintiff complied with the Court's order and filed an amended complaint on May 13, 2009.

On October 14, 2009, the Court ordered summons to issue. The defendants were served in January, 2010 and several months later they separately moved to dismiss all the claims against them.  The plaintiff has opposed those motions and, at a hearing held on August 4, 2010, the Court heard oral argument on them. At that time, the Court allowed the plaintiff additional time to retain counsel and submit supplemental oppositions to the pending motions but forewarned the plaintiff that if she did not do so

the Court would decide the motions based on the arguments as presented.  Thereafter, the Court allowed plaintiff an additional extension of time to retain counsel until October 1, 2010.  On that date, the plaintiff requested a further extension of time, which the Court denied.

## II.  <u>Analysis</u>

### A.   MSP's Motion to Dismiss

The essence of the plaintiff's allegations against the MSP are that certain officers: 1) falsely arrested her, 2) used excessive force against her, 3) forcibly removed her from the AA Admirals Lounge, 4) failed to inform her of the charges against her, 5) placed her in a holding cell and 6) sexually and physically harassed her.  Plaintiff maintains that in taking those actions, the MSP itself violated the ADA, the Eighth and Fourteenth Amendments and other "Civil Rights laws" and committed various torts, including malicious prosecution and false arrest. The MSP moves to dismiss all of those claims pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

#### 1.   Plaintiff's ADA Claim and Sovereign Immunity

First, the MSP contends that the plaintiff's civil rights claims are barred by the Eleventh Amendment.  The MSP, which is a state agency, cannot be sued directly unless it has waived its sovereign immunity or Congress has unequivocally abrogated that immunity pursuant to Section 5 of the Fourteenth Amendment.  <u>See</u>

-7-

<u>Seminole Tribe of Fla.</u> v. <u>Florida</u>, 517 U.S. 44, 54 (1996).  The plaintiff has not alleged that the MSP has waived its immunity as to the civil rights claims she brings.

In certain cases, however, Title II of the ADA has been found to "validly abrogate" a state's sovereign immunity.  <u>See</u> <u>United States</u> v. <u>Georgia</u>, 546 U.S. 151, 159 (2006) ("Title II validly abrogates state sovereign immunity" insofar as it "creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment"); <u>Tennessee</u> v. <u>Lane</u>, 541 U.S. 509, 531 (2004) (Title II constitutes valid abrogation as it applies to class of cases implicating disabled persons' fundamental right of access to the courts).  Thus, if it were found that Congress properly abrogated the Commonwealth's sovereign immunity with respect to Ms. Montae's ADA claims against the MSP, her suit would not be barred by the Eleventh Amendment.  Making that determination requires, however, resolution of two predicate questions: 1) whether Congress unequivocally expressed its intent to abrogate and 2) if so, whether it acted pursuant to a valid grant of constitutional authority.  <u>Kimel</u> v. <u>Fla. Bd. of Regents</u>, 528 U.S. 62, 73 (2000).

Where possible, however, the Court should avoid unnecessarily answering constitutional questions such as the one posed here. <u>See</u> <u>Lyng</u> v. <u>Nw. Indian Cemetery Protective Ass'n</u>, 485 U.S. 439, 445-46 (1988).  If the plaintiff cannot state a claim

under the ADA, the Court need not address whether the MSP is
entitled to Eleventh Amendment immunity.  Thus, rather than
proceeding directly to an abrogation analysis, the Court will
first evaluate the merits of the plaintiff's ADA claim.

To state a claim under Title II of the ADA, the plaintiff
must allege that 1) she is a qualified individual with a
disability, 2) she was either excluded from participation in or
denied the benefits of a public entity's services or programs and
3) such exclusion was by reason of her disability.  42 U.S.C. §
12132; Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st
Cir. 2000).  In wrongful arrest cases, there are two theories
under which to establish ADA liability: 1) where the police
wrongfully arrest someone with a disability because they
misperceive the effects of that disability as criminal activity
and 2) where police fail reasonably to accommodate a person's
disability during the investigation or arrest, causing the person
to suffer greater injury than otherwise would occur.  Steeves v.
City of Rockland, 600 F. Supp. 2d 143, 179 (D. Me. 2009) (citing
Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999)).

Here, assuming that the plaintiff's PTSD renders her
"disabled" within the meaning of the ADA, she does not attribute
her arrest to the MSP officers' misperception of the effects of
that condition as criminal activity.  To the contrary, she claims
that the police officers were "fully aware of her disability

because she had vocalized [it] to them." Moreover, she alleges that she was neither "drunk" nor acting in a "disorderly" fashion and that her "mental facilities were completely intact." Thus, because the plaintiff does not connect her arrest to any symptoms of PTSD, she does not allege sufficient facts to support a finding of ADA liability under the first theory of wrongful arrest.

Nor does the plaintiff state a claim under the second theory. Even if the officers were aware that she self-identified as being disabled, that knowledge must have been coupled with a failure on their part to accommodate her disability. The plaintiff alleges that the MSP officers' actions caused her to suffer "fear and trauma" but she makes no claim that she was injured to any greater extent than a non-disabled arrestee would have been. Thus, because Ms. Montae does not allege that the MSP officers wrongfully arrested her on account of her disability or failed to accommodate that disability, her ADA claims are untenable and the Court need not address the merits of the MSP's sovereign immunity defense.

### 2.   Section 1983 Claims

Although the plaintiff has not directly invoked 42 U.S.C. § 1983, her claims could be construed as falling under the purview of that section. Such claims, however, cannot be pursued against the MSP because it is not a "person" within the meaning

of § 1983.  <u>See</u> <u>Will</u> v. <u>Mich. State Police</u>, 491 U.S. 58, 64

(1989).  To the extent that the plaintiff seeks to state claims

for violation of the Eighth and Fourteenth Amendments, she must

bring such claims against the MSP officers in their <u>personal</u>

<u>capacities</u>, not against the MSP itself.

### 3.    **False Arrest and Malicious Prosecution Claims**

The plaintiff also attempts to state claims against the MSP

for malicious prosecution and false arrest.  The Massachusetts

Tort Claims Act (presumably the plaintiff's source of

jurisdiction for proceeding against the MSP) provides a limited

waiver of the Commonwealth's sovereign immunity:

> Public employers shall be liable for injury or loss of
> property or personal injury or death caused by the
> <u>negligent</u> or <u>wrongful</u> act or omission of any public
> employee while acting within the scope of his office or
> employment, in the same manner and to the same extent
> as a private individual under like circumstances...

Mass. Gen. Laws ch. 258, § 2 (emphasis added).  That waiver does

not, however, apply to claims arising out of <u>intentional</u> torts

such as false arrest or malicious prosecution.  Mass. Gen. Laws.

ch. 258, § 10(c).  Accordingly, those claims are barred.

### 4.    **Other Tort Claims**

Finally, the MSP asserts that, to the extent the complaint

states other, non-intentional tort claims, those claims must also

be dismissed.  Pursuant to Mass. Gen. Laws ch. 258 § 4, in order

to proceed on a claim against a public employer, a claimant must:

have first presented his claim in writing to the
executive officer of such public employer within two
years after the date upon which the cause of action
arose.

Only if the claim is denied, or the executive officer fails to

settle, arbitrate, or resolve the claim within six months, may

the claimant file suit.  Weaver v. Commonwealth, 438 N.E.2d 831,

833-34 (Mass. 1982).  Written presentment is a condition

precedent to recovery under Chapter 258 and is ordinarily

strictly applied.  Vasys v. Metro. Dist. Comm'n, 438 N.E.2d 836,

840 (Mass. 1982).

     The MSP argues that in order for the plaintiff to state a

viable tort claim against the MSP, she would have been required

to make a written presentment of that claim within two years

after it accrued, i.e. on or before August 21, 2009.  Having

failed to make the required presentment, the plaintiff is

foreclosed from alleging any non-intentional tort claims against

the MSP.

     The plaintiff responds that her failure to comply with the

presentment requirement should be excused because it did not

result in harm or inconvenience to the MSP.  That argument was

considered and ultimately rejected by the Supreme Judicial Court.

See Weaver, 438 N.E.2d at 834-36 (rejecting notion that

Commonwealth must be prejudiced by plaintiff's failure to comply

with presentment requirement).  The plaintiff's second argument

is more convincing.  She insists that, although she did not

-12-

adhere to the technical aspects of the presentment requirement, she complied with the spirit of the rule because she 1) contacted the Civil Rights Division of the Attorney General's Office on numerous occasions, 2) filed a complaint with the Internal Affairs Division of the Massachusetts State Police and 3) when no response was forthcoming, expressed her intent to take legal action.

Given that the plaintiff is acting pro se, she should not be precluded from stating a colorable claim against the MSP solely on the basis of her failure to send the necessary presentment letter.  It does not appear, however, that the plaintiff has properly alleged any torts that are not barred by sovereign immunity (e.g., negligence or negligent infliction of emotional distress).  Thus, her compliance with the spirit of the presentment rule is immaterial.

### B.   AA's Motion to Dismiss

AA moves to dismiss the plaintiff's amended complaint on three separate grounds: 1) res judicata, 2) failure to satisfy Fed. R. Civ. P. 60 and 3) failure to state a claim upon which relief can be granted.

#### 1.   Res Judicata

Broadly, the doctrine of res judicata prevents re-litigating claims that "were raised or could have been raised in [a prior] action."  Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st

Cir. 2005) (citation omitted).  Under federal law, the elements
of <u>res</u> <u>judicata</u> are:

> (1) a final judgment on the merits in an earlier action;
> (2) an identity of the cause of action in both the
> earlier and later suits; and (3) an identity of parties
> or privies in the two suits.

<u>Kale</u> v. <u>Combined Ins. Co. of Am.</u>, 924 F.2d 1161, 1165 (1st Cir.
1991).

In this case, the second and third elements are easily met.
To determine whether sufficient subject matter identity exists
between an earlier and a later suit, courts employ a
transactional approach.  <u>Gonzales</u> v. <u>Banco Cent. Corp.</u>, 27 F.3d
751, 755 (1st Cir. 1994) (citing <u>Kale</u>, 924 F.2d at 1166).  This
approach recognizes that a final judgment extinguishes subsequent
claims "with respect to all or any part of the transaction ...
out of which the action arose."  <u>Gonzales</u>, 27 F.3d at 755.

Here, the complaint in the December, 2008 case asserts
virtually identical causes of action as those asserted in the
January, 2008 case but adds new claims for violation of the ACAA,
intentional infliction of emotional distress, negligence and
other various torts.  Those new claims arise from the same
nucleus of operative facts and thus could have been, but were
not, raised in the initial complaint.  <u>See</u> <u>id.</u>

Furthermore, there is sufficient identicality of parties to
trigger <u>res</u> <u>judicata</u>.  But for the failure to name particular
state police officers in the prior suit, the parties in the two

-14-

suits are identical.

The first factor of the res judicata analysis is slightly
more complicated.  AA contends that this factor is satisfied
because the Court's dismissal of the prior action (the January,
2008 case) operates as a final judgment on the merits.  Fed. R.
Civ. P. 41(b) states:

> If the plaintiff fails to prosecute or to comply with
> these rules or a court order, a defendant may move to
> dismiss the action or any claim against it.  Unless
> the dismissal order states otherwise, a dismissal
> under this subdivision...and any dismissal not under
> this rule — except one for lack of jurisdiction,
> improper venue, or failure to join a party under Rule
> 19 — operates as an adjudication on the merits.

On July 23, 2008, the Court entered an order dismissing the
January, 2008 case with prejudice for failure to comply with the
Court's order of April 4, 2008.  AA contends that because that
dismissal was not for lack of jurisdiction, improper venue or
failure to join a necessary party, Rule 41 dictates that the
dismissal operates as an adjudication on the merits.

Although dismissal with prejudice generally triggers claim
preclusion, an exception to that rule may be warranted in this
case.  The underlying principle behind res judicata is that, for
claim preclusion to apply, a litigant first must have had a full
and fair opportunity to litigate her claim.  Gonzales 27 F.3d at
758.  Here, although the plaintiff did not comply with the
Court's order in the January, 2008 case (resulting in dismissal
of the action), her failure to adhere to the Court's filing

-15-

deadline should not bar her from litigating the merits of her
case, particularly given that she is proceeding pro se.  See
Hodges v. Publix Super Mkts., 2010 WL 1337703, at *2 (11th Cir.
Aug. 7, 2010) ("The res judicata doctrine may be qualified or
even rejected when its application would contravene an overriding
public policy or result in manifest injustice.") (citation
omitted).  Thus, res judicata does not mandate dismissal.

### 2.  Rule 60 Request for Relief

AA also argues that relief from the Court's final judgment
in the January, 2008 case pursuant to Fed. R. Civ. P. 60 is
inappropriate.  Rule 60 permits courts to relieve a party from a
final judgment on grounds of "mistake, inadvertence, surprise, or
excusable neglect."  Fed. R. Civ. P. 60(b)(1).  To warrant relief
under that rule for excusable neglect, the plaintiff must offer,
at the very minimum, "a convincing explanation as to why the
neglect was excusable."  Cintron-Lorenzo v. Departamento de
Asuntos del Consumidor, 312 F.3d 522, 527 (1st Cir. 2002).  Rule
60(b) is a "vehicle for extraordinary relief" and motions
invoking the rule should be allowed "only under extraordinary
circumstances."  Davila-Alvarez v. Escuela de Medicina
Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001).

In the first complaint in the December, 2008 case, the
plaintiff explained that she thought the previous complaint in
the earlier case "would be null and void" due to the misnomer of

the law enforcement defendants.  She therefore invoked Rule 60,
claiming that her failure to amend the complaint within the 35-
day period constituted excusable neglect due to "family illness"
and "suffering of trauma and fear."  She alleged that, in
addition to the physical and psychological trauma she had
suffered as a result of the Logan Airport arrest, she was dealing
with

> constant stalking, civil and sexual harassment, false
> criminal charges, threats, unlawful entry, vandalism of
> personal property and many more crimes.

She also asserted that the public defender assigned to her
criminal case had advised her to let the suit "drop" until the
criminal charges were resolved.

AA attempts to portray the plaintiff's decision to "drop"
and re-file the suit as a "brazen attempt to manipulate the
judicial process."  It is more likely, however, that her actions
were simply the product of her ignorance of the judicial system
and the poor advice of her public defender.  Pro se litigants are
not exempt from the rules of civil procedure, Rivera v. Riley,
209 F.3d 24, 27-28 (1st Cir. 2000), but the Court may, in certain
situations, afford them greater leniency.  See Hughes v. Rowe,
449 U.S. 5, 9 (1980).  Here, although the proper course of action
would have been to request a stay during the pendency of the
criminal proceedings, the justification proffered by the
plaintiff (assuming it is true), would constitute the kind of

"extraordinary circumstances" envisioned by Rule 60(b). Thus, the plaintiff's complaint will not be dismissed for failure to satisfy the requirements of Fed. R. Civ. P. 60(b).

### 3. Failure to State a Claim

Finally, AA contends that even if the Court were to set aside the res judicata implications of its dismissal of the earlier action and grant the plaintiff relief from that judgment pursuant to Rule 60(b), the plaintiff's new complaint should still be dismissed for failure to state a claim upon which relief can be granted. This argument is more persuasive.

The amended complaint advances a multitude of claims against AA, including violation of the ADA, the Civil Rights Act of 1964 and the ACAA, as well as negligence, harassment, malicious prosecution (as instigators of a false arrest) and intentional infliction of emotional distress. In essence, the plaintiff alleges that 1) she is a person with a qualified disability (PTSD) as well as a person belonging to various protected classes (by virtue of her gender, race, religion and political beliefs) and 2) AA denied her the benefit of its services. The plaintiff asserts vigorously that AA's refusal to let her board its flights was caused by its

> deeply rooted hatred for the disabled, a partial
> Mexican, a woman, a war resister with a reasonable
> belief in non-violence, religious tolerance and being
> perceived as weak prey for people who enjoy watching
> others suffer.

-18-

The plaintiff does not, however, allege any facts to support that
brazen charge.  She states that the airline "knew of her
disability" because she told several employees that she suffered
from PTSD but she pleads no facts demonstrating that it denied
her services because of her disability or membership in a
protected class.  Without the allegation of any facts to
substantiate her discrimination claims (and derivative claims of
negligence, harassment, malicious prosecution and intentional
infliction of emotional distress, which all seem to be predicated
on the underlying discrimination claim), the plaintiff simply
does not "state a claim for relief that is plausible on its
face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).
Accordingly, the amended complaint cannot survive AA's motion to
dismiss.

## ORDER

In accordance with the foregoing, the motions to dismiss of
the Massachusetts State Police (Docket No. 15) and American
Airlines (Docket No. 23) are **ALLOWED.**


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge


Dated November 4, 2010